# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **MELONEY A. ROBINSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **5:12-cv-1954-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Meloney A. Robinson ("Robinson") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is not supported by substantial evidence and that the ALJ failed to apply proper legal standards in considering Robinson's claim.  Therefore, for the reasons elaborated herein, the court will reverse the decision denying benefits and remand the case for further proceedings.

### I.  Procedural History

Robinson filed an application for Disability Insurance Benefits on April 16, 2008, alleging a disability onset date of January 15, 2008, due to pain caused by a

protruding disc in her lower back.  (R. 12, 107).  After the SSA denied Robinson's claim, she requested a hearing before an ALJ.  (R. 68-69).  The ALJ subsequently denied Robinson's claim, (R.9-23), which became the final decision of the Commissioner when the Appeals Council refused to grant review.  (R. 1-4).  Robinson then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529

(quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)   whether the claimant is currently unemployed;

(2)   whether the claimant has a severe impairment;

(3)   whether the impairment meets or equals one listed by the Secretary;

3

>   (4) whether the claimant is unable to perform his or her past work; and
>
>   (5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself*. See 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id.*

5

## IV. The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Robinson met the insured status requirements of the Act through June 30, 2009. (R. 14). Moving to the first step, the ALJ found that Robinson had not engaged in substantial gainful activity since January 15, 2008, and, therefore, met Step One. *Id.* Next, the ALJ found that Robinson satisfied Step Two because she suffered from the severe impairments of "degenerative disk disease at the L5-S1 level with shallow disk protrusion, budding [sic], not deforming the left nerve root, with chronic back and leg pain; and status post surgery at the L5-S1 level on the left." *Id.* The ALJ then proceeded to the next step and found that Robinson failed to satisfy Step Three because prior to her date last insured (DLI) she "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments." (R. 15). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that, through her DLI, Robinson

> had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). She can lift 20 pounds occasionally and ten pounds frequently, sit six of eight hours with breaks, and stand four of eight hours. She could be expected to do either less than 45 minutes at a time. She can sit one to two minutes without changing positions. She can walk four of eight hours, but no more than 30 minutes at a time. She can occasionally manipulate objects; climb stairs, kneel, crouch, and stoop, but not repetitively. She should avoid climbing ladders, ropes or scaffolds, crawling, working around heavy machinery or unprotected heights, and exposure to extreme cold. Objectively, the findings in the medical records show no limitation of

> upper extremities for fine manipulation; there is some deficit of gross manipulation with the right hand. The limitations allow for some degree of pain.

(R.15). As of her DLI, Robinson was 39 years old, (R. 123), and had past relevant work that included light semi-skilled work as a general clerk and companion. (R. 55-56). In light of Robinson's RFC, the ALJ held that through her DLI she was "able to perform her past relevant work of general clerk . . . and companion." (R. 18). Therefore, the ALJ found that Robinson "has not been under a disability, as defined in the Social Security Act, at any time from January 15, 2008, the alleged onset date, through June 30, 2009, the date last insured." *Id*.

## V. Analysis

The court now turns to Robinson's contentions that the ALJ (1) did not properly evaluate her complaints of pain consistent with this circuit's pain standard; and (2) failed to properly evaluate the opinion of her treating physician. *See* doc. 9 at 4-9. The court addresses each contention in turn.

    A.    <u>The ALJ did not properly apply the pain standard in evaluating Robinson's allegations of disabling pain.</u>

As mention in Section III, *supra*, the pain standard in this circuit requires a two part analysis. In applying this standard, the ALJ found Robinson met the first part of the pain standard because she has an underlying medical condition. (R. 16); *see Holt*, 921 F.2d at 1223. However, the ALJ found that Robinson did not meet either prong of the second part:

> [T]here is no objective clinical evidence of a condition which could reasonably be expected to produce the level of pain, numbness and other symptoms which the claimant alleges have precluded him/her from working. Neither prong of part two of the standard is met, since the objective evidence does not confirm either the severity of the claimant's alleged symptoms arising from his/her medically documented conditions, or that those conditions could reasonably be expected to give rise to the symptoms alleged by the claimant.

(R. 16); *Holt,* 921 F.2d at 1223. The court recognizes that the determination of whether Robinson's objectively determined medical condition is of such severity that it could reasonably be expected to produce the pain and other symptoms that she alleges "is a question of fact, which . . . is subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir. 1985). Nonetheless, in *Hand* the court emphasized that the pain standard "does not provide license to the [Commissioner] to deny disability claims where medical evidence in the record clearly indicates the existence of a medical impairment which could reasonably be expected to produce disabling pain." *Id.* at 1549 n.6. Therefore, the court must determine if the ALJ's finding was reasonable based on the record as a whole. In doing so, "[i]t is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole." *McCruter v. Bowen* 791 F.2d 1544, 1548 (11th Cir. 1986).

Unfortunately, the ALJ provides little guidance as to the reasons he found Robinson did not have a condition that could reasonably be expected to give rise to

8

her symptoms. Although the ALJ discussed some of the medical evidence, he did not explain how that evidence supported his finding. For example, while the ALJ noted Robinson had back surgery, and that "[n]o problems were noted postsurgically," (R. 17), he also observed that "[a]fterwards, [Robinson] had continued pain and received prescriptions for morphine, Meloxicam and Robaxin." *Id.* Indeed, the medical records confirm that despite initially reporting significant improvement, (R. 288), by March 2009 Robinson described pain at a level of eight on a ten-point scale. (R. 291). At that time, her treating surgeon, Dr. Robert Ward, found positive straight leg raising on the left. (R. 292). Robinson's condition continued to deteriorate and, by June 2, 2009, Robinson was reporting a constant tingling and throbbing pain in her left lower extremity, and rated her average pain as a six on a ten-point scale. (R. 297). At this visit, Dr. Ward stated that Robinson

> may continue with residual left lower extremity discomfort. This was present for nearly a year prior to the surgery. She understands the longer the nerve is compressed the more likely she is to have residual nerve pain in that leg after the pressure is removed. She has done essentially everything she can to alleviate the pain. She is going to be significantly limited physically in the future due to her left lower extremity pain. We have discussed activity restrictions and modifications in detail. Hopefully the pain with [sic] slightly subside over time which is usually the case.

(R. 299). These reports from Dr. Ward undermine the ALJ's finding that Robinson's condition could not reasonably be expected to give rise to her symptoms. In fact, in light of Dr. Ward's treatment notes in their entirety, it was unreasonable for the ALJ to rely only on the small snapshot of treatment notes that

9

showed improvement immediately after Robinson's back surgery, and to ignore the later notes outlining the return of Robinson's pain.

To support his position, the ALJ also cited an MRI scan performed on July 9, 2008, which "revealed mild bulging disk at L5-S1, and less marked bulging disk at L4-5, with no evidence of herniated disk." (R. 17). This accurately reflects the report of the radiologist who interpreted the scan. (R. 310). However, the ALJ did not discuss Dr. Ward's interpretation of that MRI: "MRI of the lumbar spine done at Open MRI of Decatur on 7/9/08 reveals DDD [degenerative disc disease] at L4-5 and L5-S1 with an HNP[2] at L5-S1 on the left." (R. 246). The failure to explain why the ALJ relied on the radiologist's report rather than Dr. Ward's interpretation is significant because Dr. Ward considered Robinson's back condition severe enough to warrant surgery:

> Ms. Robinson . . . has been experiencing low back pain with accompanying radiculopathy for over 11 month now. She has undergone trigger point injections, medication therapy, and LESI's with no significant relief obtained. Upon review of her lumbar MRI she was found to have an HNP at L5-S1 on the left which is going to require surgical intervention.

(R. 276). Because the ALJ did not discuss Dr. Ward's interpretation of the MRI, the court is unable to determine whether the ALJ had a reasonable basis to rely only on the radiologist's report to find Robinson did not meet the pain standard.

---

[2] HNP is an acronym for herniation of nucleus pulposus. It is a rupture or prolapse of the nucleus pulposus into the spinal canal. *Dorland's Illustrated Medical Dictionary* 758 (27th Edition).

10

The ALJ also observed that on February 10, 2010, over six months after Robinson's DLI, Dr. Kathy Sparacino, Robinson's primary care physician, noted that Robinson's pain was well controlled with morphine. (R. 17). However, this finding ignores that on July 29, 2009, a month after Robinson's DLI, Dr. Sparacino noted Robinson was "not getting pain relief taking her current medications." (R. 210 ). Because Dr. Sparacino's notes show that Robinson's condition changed after July 2009, her 2010 treatment notes do not provide evidence to support finding Robinson did not meet the pain standard on June 30, 2009.[3]

Finally, the ALJ gave significant weight to the testimony of Dr. Allan Levine, the medical expert who testified at Robinson's ALJ hearing, (R. 17), and relied heavily on that testimony to find Robinson had no condition that could reasonably cause the symptoms that she alleged. Dr. Levine testified that "allowing for some degree of pain that one would expect post-operative in the back situation that she has," Robinson would be able to sit for six hours, stand for four hours, and walk for four hours in an eight-hour day if she were allowed to change postures periodically. (R. 51). He further testified that his assessment was based "on a combination of factors but, primarily, based on post-operative evaluation."[4] (R. 52).

---

[3] It may well be that Dr. Sparacino's notes suggest that Robinson was not disabled in January 2010. Nonetheless, the ALJ must still consider whether Robinson was entitled to a closed period of disability that began prior to her DLI.

[4] The other factors were a nerve conduction study done on July 31, 2009, which showed no electrophysiologic evidence of neuropathy or left lumbosacral radiculopathy,

This assessment, however, was based on an incomplete record. Specifically, Dr. Levine did not have access to the treatment notes from Dr. Ward. These notes were not part of the record when the ALJ conducted his hearing and the ALJ left the record open to allow Robinson to submit them. (R. 58-59). The ALJ subsequently made them a part of the record as Exhibit 11F. (R. 265-325). As outlined previously, these records show that Robinson initially received significant pain relief from the surgery, but later reported significant pain, and had positive SLR tests indicating sciatica. Moreover, over six months after Robinson's surgery, Dr. Ward opined that Robinson "is going to be significantly limited physically in the future due to her left lower extremity pain." (R. 299). These treatment notes undermine the basis on which Dr. Levine formed his opinions and, at a minimum, deserve consideration by Dr. Levine to ascertain what impact, if any, they have on his opinions. Where, as here, Dr. Levine did not have access to these critical notes it was unreasonable for the ALJ to rely significantly on Dr. Levine's testimony to support his finding that Robinson's condition could not reasonably cause disabling pain.

      For these reasons, the court concludes that the ALJ's finding that Robinson did not satisfy the pain standard is not supported by substantial evidence. The ALJ relied heavily on the opinions of Dr. Levine, who did not have access to the

---

and Dr. Sparacino's notation of a grossly normal neurological examination on January 4, 2010. (R. 51, 206, 229).

treatment notes from Dr. Ward.  He also relied on 2010 treatment notes from Dr. Sparacino, while failing to consider Dr. Sparacino's treatment records near the time of Robinson's DLI.  Likewise, his reliance on the radiologist's reading of the July 2008 MRI, without discussing Dr. Ward's contrary reading of that MRI was unreasonable.  Therefore, this matter must be remanded so that the Commissioner can properly evaluate whether Robinson met the pain standard based on all of the evidence.

      B.      <u>The ALJ failed to properly evaluate Dr. Ward's opinion.</u>

Robinson also contends that the ALJ did not give proper weight to the opinion of Dr. Ward.  Doc. 9 at 8-9. As Robinson's treating surgeon, Dr. Ward's statement that Robinson "is going to be significantly limited physically in the future due to her left lower extremity pain" is a statement about the nature and severity of her impairment and symptoms.[5]  Therefore, it is a medical opinion that the ALJ was required to consider.  *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1179 (11th Cir. 2011) (finding treatment notes were medical opinions because they contained "a description of Winschel's symptoms, a diagnosis, and a judgment about

---

[5] The Commissioner argues on appeal that Dr. Ward's statement was a prospective opinion about "potential future significant limitations." Doc. 10 at 8-9.  The context of Dr. Ward's opinion suggests otherwise.  His note states that "she may continue with the residual left lower extremity discomfort," and "has done essentially everything she can to alleviate the pain," suggesting he was remarking on her current symptoms.  (R. 299).  He also stated that "[h]opefully the pain [will] slightly subside over time," which again suggests his note referred to her current pain level.  *Id.*  In any event, the ALJ did not discuss Dr. Ward's opinion or indicate that he found it to prospective in nature.

13

the severity of his impairments"); 20C.F.R. § 404.1527(b) ("[W]e will always consider the medical opinions in your case record . . . ."). As a result, when the ALJ rejects Dr. Ward's opinion, he must "clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ did not discuss Dr. Ward's opinion or articulate reasons for rejecting it. Consequently, the ALJ failed to apply the proper legal standards in considering the medical opinions of Robinson's treating physician. Therefore, remand is warranted so that the Commissioner can properly consider the medical opinion of Dr. Ward under the applicable legal standards.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Robinson did not meet the pain standard is not supported by substantial evidence, and that the ALJ failed to apply proper legal standards in considering the opinion of her treating physician. Therefore, the Commissioner's final decision is due to be **REVERSED** and **REMANDED** for further proceedings. A separate order in accordance with the memorandum of decision will be entered.

**DONE** this 28th day of May, 2014.

_____
 **ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE